# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

November 14, 2021

**BY ECF**

The Honorable Victor Marrero
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Dov Malnik*, (Case No. 19-CR-714)

Dear Judge Marrero:

      We respectfully submit this letter on behalf of defendant Dov Malnik to briefly respond to a few points in the Government's Sentencing Submission (Dkt. 26) ("Gov't Submission").

      First, we do not believe it is accurate to say that "the Probation Office [ ] concluded that" the sentences of Cohen and Lavidas "do not serve as fair comparisons" to this case. (Gov't Submission at 7). While the Probation Office did recognize differences between the cases, it concluded that "fair arguments can be made that Cohen and Lavidas' sentencing outcomes should weigh in the Court's calculus for Malnik." (PSR at p. 29). Moreover, to the extent that the Probation Office noted those distinctions, that fact only supports the imposition of a sentence of time served because it shows that, even after accounting for any potential differences between the cases, the Probation Office *still* recommended a sentence of time served.

      Second, we do not believe that the record supports the Government's argument that Mr. Malnik "engaged in this crime from a far more sophisticated perch than either Cohen or Lavidas." (Gov't Submission at 8-9). In advance of Mr. Cohen's sentencing, the Government stated that:

> Cohen is *a sophisticated investment banker* who worked at a prestigious global investment bank [Goldman Sachs] for nearly *ten years*. During that time, Cohen well understood the importance of maintaining client confidentiality and received training on the laws strictly prohibiting insider trading. Over a *multi-year period*, the defendant *betrayed his employer and his corporate clients* by *secretly stealing confidential business information that had been entrusted to him*, and providing that information to a securities trader, Marc Demane Debih ("Demane") so that Demane could place timely, profitable securities trades based on that information and share those profits with Cohen. . . . [T]he defendant *knowingly and repeatedly* engaged in this scheme for a single reason: to receive a portion of Demane's

trading profits in cash. The defendant's participation in the scheme was *cunning and calculated*; he communicated his stolen information over unregistered burner phones in order to evade law enforcement and he arranged for his *cash payments* [*totaling $1 million*] to be picked up in person. . . . [I]t is people like the defendant – with their access to inside information – that make the entire criminal enterprise of insider trading possible. *The way the defendant committed this crime can only be described as brazen*. . . . Shortly after arriving in New York, Cohen literally walked a few blocks from Goldman's offices in Manhattan to a Greek restaurant to pick up a pre-paid, unregistered "burner" phone from a complete stranger. He then used that phone to speak in complex code to Demane, and even switched phones between deals. The defendant then *arranged to be paid in cash overseas for his crimes*. These are *not the trappings of some amateur*, thoughtless crime; they are the actions of someone who *knew what he was doing was wrong and took every precaution to evade detection*.

(*See* Dkt. 25-19, *United States v. Cohen*, 19-cr-741, Gov't Sentencing Submission at 1, 4, 11 [Dkt. No. 44] (May 27, 2020) (emphasis added)). Similarly, the Government noted that Lavidas was an "executive" at his family's pharmaceutical business that was "publicly traded on the Athens Stock Exchange" who:

> engaged in a protracted course of conduct over a multi-year period and involved a family member and a close friend in his scheme. On three separate occasions, knowing full well that Ariad's MNPI had to be kept confidential, he took the MNPI that his father had stolen and passed it to Nikas. His conduct was the proximate cause of approximately $6.5 million of illegal profits (by Nikas), and the but-for cause of millions of dollars of additional profits (by other downstream traders).

(See Dkt. 25-21, *United States v. Lavidas*, 19-cr-716, Gov't Sentencing Submission at 5-6 [Dkt. No. 115] (June 16, 2020)). And though the Government now claims that Lavidas "derived very little personal benefit from the crime" referring to it as "good will and an investment" in his company from one of Lavidas's "friends and mentors," it has previously said that Lavidas "received financial benefits," including "substantial funding," from George Nikas, one of the very securities traders Lavidas tipped, who personally earned over $6.5 million in profits. (*Id.* at 6-7). The conduct of all three men was serious. We do not believe it is fair to cast that of Mr. Malnik's as meaningfully more culpable than Cohen or Lavidas. This is particularly so given that it is the breach of duty by insiders such as Cohen and Lavidas which constitutes the fraudulent act in any insider trading case, of which the remote tippee's liability is derivative.

Finally, the Government attempts to dismiss the sentences of Lavidas and Cohen as being "driven predominately by the time period during which they occurred," arguing that that "things have shifted significantly since the summer of 2020." (Gov't Submission at 9). As an initial matter, § 3553(a) requires the Court to consider "the need to avoid unwarranted sentence disparities" among defendants "who have been found guilty of similar conduct." It is not clear that this Court should give consideration to the "time period" when Lavidas and Cohen were sentenced. But even if the Court does find that the "time period" when Cohen and Lavidas were sentenced warrants consideration, we respectfully disagree with the Government's contention that Judge Cote's rationale in sentencing Lavidas does not apply equally to Mr. Malnik. The Government claims that "in sentencing Lavidas,

Judge Cote specifically stated that her sentence would have been higher if not for the ongoing nature of the pandemic at the time of sentencing." (*Id.*). But what Judge Cote said was that she didn't know what sentence she would have imposed "if we weren't in the midst of the pandemic, and if the defendant *had not been experiencing the situation that he has in prison.*" (*See* Dkt. 25-22, *United States v. Lavidas*, 19-cr-716 (S.D.N.Y.) (Cote, D.), [Dkt. 127] Sent. Tr. at 59-60 (Jul. 30, 2020) (emphasis added). In doing so, Judge Cote recognized and considered that Lavidas had *already* been imprisoned for several months at the MCC during the pandemic in harsh conditions. Indeed, Judge Cote expressly found "the fact that the defendant's experience in prison had been very difficult due to the lockdown relevant and important for [her] to consider." (*Id.* at 56-57). Other judges in this district have gone as far as to come up with a formula for how much credit inmates should receive for incarceration during the pandemic. For example, Judge Oetken has said that "I [] believe that because it's been harsher than a usual period that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served." *United States v. Estevez*, 18-cr-669 (S.D.N.Y.), [Dkt. 250] Sent. Tr. at 17-18 (Apr. 16, 2021). Here, just like Lavidas, Mr. Malnik comes into his sentencing having *already* served many months of imprisonment in harsh conditions at the peak of this unprecedented pandemic, from October 7, 2020 until June 9, 2021, and has additionally served an additional five months of home confinement in a foreign country thousands of miles away from his wife and children.

Accordingly, we submit that the sentences imposed on Cohen (12 months home confinement) and Lavidas (a year and a day) should be considered by the Court, and support a sentence of time served (over 8 months imprisonment) in this case, as recommended by the Probation Office.

Respectfully submitted,

/s/ Michael S. Schachter

Michael S. Schachter

cc: (via ECF)
Richard Allen Cooper
Daniel Marc Tracer
(*U.S. Department of Justice*)