LBJGmalS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          19 Cr. 714 (VM)

5    DOV MALNIK,

6                                          Sentence
               Defendant.
7    ------------------------------x

8
                                          New York, N.Y.
9                                          November 19, 2021
                                          9:30 a.m.
10

11   Before:

12                    HON. VICTOR MARRERO,

13                                         District Judge

14                         APPEARANCES

15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   DANIEL TRACER
     RICHARD A. COOPER
18        Assistant United States Attorney

19   MICHAEL S. SCHACHTER
     RANDALL W. JACKSON
20        Attorneys for Defendant

21

22

23

24

25

LBJGmalS

1                    (The Court and all parties present remotely)

2              THE COURT:  Good morning, this is a proceeding in the

3     matter of United States v. Malnik, Docket No. 19 Cr. 714.

4              Is Mr. Malnik, the defendant on the line?

5              THE DEFENDANT:  Yes.  Good morning, your Honor.

6              THE COURT:  Counsel, please enter your appearances for

7     the record.

8              MR. TRACER:  Good morning, your Honor.  This is Daniel

9     Tracer with the US attorney's office.

10             MR. SCHACHTER:  And good morning, your Honor.  This is

11    Michael Schachter on behalf of Mr. Malnik.

12             THE COURT:  Thank you.

13             MR. JACKSON:  Good morning, your Honor.  This is

14    Randall Jackson on behalf of Mr. Malnik.

15             MR. COOPER:  Good morning, your Honor.  Peter Cooper

16    for the government as well.

17             THE COURT:  As you know, we are in the midst of the

18    COVID-19 pandemic.  And I am conducting this proceeding

19    remotely pursuant to the authority provided by Section 15002 of

20    the CARES Act.  Counsel are appearing telephonically and the

21    defendant, Mr. Malnik, is participating by telephone rather

22    than in person.  I am conducting this proceeding by

23    teleconference rather than videoconference under the CARES Act

24    because I find that videoconferencing is not yet reasonably and

25    reliably available in our district at this time based on my

LBJGmalS

1    understanding of this district's currently limited technical

2    capability and other constraints.

3        The Court scheduled proceeding as the sentencing of

4    Mr. Malnik in this matter.  Under normal circumstances,

5    everyone participating in this proceeding would be physically

6    present in the courtroom.  I am instead conducting this

7    proceeding remotely to ensure the safety of everyone and avoid

8    the spread of COVID-19.

9        I note that defense counsel has indicated that

10   Mr. Malnik's consent to proceed has been given.  I want to

11   confirm on the record that Mr. Malnik agrees to proceed by

12   means of teleconference.

13       Mr. Malnik, did you discuss waiving your physical

14   appearance at this proceeding with your counsel?

15       THE DEFENDANT:  Yes, your Honor, I did.  And I agree.

16   This is fine.  Thank you, your Honor.

17       THE COURT:  Thank you.  I find that Mr. Malnik has

18   knowingly and voluntarily agreed to participate in this

19   conference by telephone and has consented to waiver of his

20   right to appear in person.

21       I have read and reviewed the presentence investigation

22   report dated August 17, 2021 and revised September 10, 2021,

23   which was prepared in connection with today's sentencing of

24   Mr. Malnik.  I've also read the submission from defense counsel

25   dated November 9, 2021, including the attached exhibits, the

LBJGmalS

1  submission from the government dated November 12, 2021, and

2  defense counsel's reply submission dated November 14, 2021.

3         Mr. Tracer, has the government read and reviewed the

4  presentence report?

5         MR. TRACER:  Yes, your Honor.

6         THE COURT:  Does the government have any additional

7  information or objections about the report to raise at this

8  time?

9         MR. TRACER:  No.  No, your Honor.

10        THE COURT:  Mr. Schachter, have you read and reviewed

11 the presentence report?

12        MR. SCHACHTER:  I have, your Honor.  And we have

13 discussed it with our client as well.

14        THE COURT:  And do you have any objections to the

15 report to raise at this point?

16        MR. SCHACHTER:  No, your Honor.

17        THE COURT:  Mr. Malnik, have you read and reviewed the

18 presentence report?

19        THE DEFENDANT:  Yes, your Honor.

20        THE COURT:  Have you discussed it with your attorney?

21        THE DEFENDANT:  Yes, I did, your Honor.

22        THE COURT:  And do you have any objections to the

23 report to raise at this point?

24        THE DEFENDANT:  No, I don't, your Honor.

25        THE COURT:  On June 25, 2021, Mr. Malnik pled guilty

LBJGmalS

pursuant to plea agreement before Magistrate Judge Stewart

Aaron to Count Nine of superseding indictment 19 Cr. 714, which

charged him with securities fraud in violation of 15 U.S.C.

Sections 78J.B and 78F.F and also 17 CFR Section 240.10B-5 and

Section 2, that is 18 U.S.C. Section 2.

As part of his plea of guilty, Mr. Malnik admitted the

forfeiture allegation with respect to Count Nine.  The Court

accepted Mr. Malnik's guilty plea on July 14th, 2021, having

found that Mr. Malnik entered the plea voluntarily, knowingly

and voluntarily and that there was a factual basis for the

guilty plea.

Mr. Tracer, does the government have any additional

comments or other circumstances for the Court's consideration

in connection with sentencing?

MR. TRACER:  Sure, your Honor.  Would this be the

opportunity for the government to provide its view and advocacy

to the Court?

THE COURT:  Yes.

MR. TRACER:  Thank you very much, your Honor.  I would

proceed for a few minutes.  We don't want to repeat the

information that's in our letter, but I would like to make a

few points for your Honor to consider in connection with the

sentencing.

The first point that we want to be very clear about is

that this was a very serious crime.  The crime, as it's now

LBJGmalS

1    explained in our submission, as well as the PSR, involved the

2    defendant knowingly using stolen material nonpublic information

3    for years and using that information to make a lot of money, to

4    make profits of millions of dollars.  And in this particular

5    case, the source of that information, the MNPI in question, it

6    was stolen from investment banks who had clients and for whom

7    both the investment banks and the clients it was important that

8    this information be kept confidential.  And nevertheless,

9    individuals who worked at these banks stole it.  They accessed

10   information they were not supposed to be accessing.  And they

11   basically sold it for a profit to various individuals.  And

12   ultimately, it made its way to the defendant.

13          And using and stealing that information is a very

14   serious crime.  It undermines the integrity of the securities

15   market.  It's a form of cheating in connection with stock

16   trading.  And so it needs to be punished appropriately.

17          I know that the defendant makes the point in his

18   submission -- I want to address a couple of the points that the

19   defendant makes -- one of them is the notion that the insiders,

20   in other words, the people who worked at the investment bank,

21   are the ones who are more culpable here.  And I submit that

22   it's not quite that simple.  And while it is true that it is

23   the insiders who do personally breach a duty to their

24   employer -- so in that respect, there is a certain component of

25   culpability to this -- schemes like this are in fact and in

LBJGmalS

truth driven by the people who are higher up the food chain,

like the defendant, that use that information to then make

millions of dollars.  In other words, the entire demand for

this kind of stealing of confidential information is really

driven by people who trade, like Mr. Malnik, and who ultimately

make millions of dollars doing so.  So they both sort of drive

the enterprise and they make the most profit from it.  So while

it is true that he is not the personal person breaching the

duty, the role that he played here is very significant and

contributes fundamentally to the operation of this kind of

criminal enterprise.

The second point that I want to highlight in

connection with sentencing is that this crime was intentionally

and purposefully very well hidden.  As described in the PSR and

our sentencing submission, numerous means were employed to hide

this conduct.  Meetings were conducted in person.  They were

using burner phones, which were these unregistered phones that

they got rid of after using them, and some of the trading in

this case was carried out in the name of companies.  And all

this was done in order to hide the crime because the defendant

understood -- along with the other people he was working

with -- that what they were doing was wrong.  And those kinds

of circumstances are significant, for two reasons, in the

Court's consideration:

Number one, they evince a certain level of brazenness

LBJGmalS

1    and culpability where, again, we think that just punishment

2    requires that the punishment be substantial enough to account

3    for those kinds of factors.  Second, the other implication is

4    that the use of these kinds of concealments make these crimes

5    difficult; difficult to uncover, difficult to prosecute.  And

6    so when these crimes are uncovered, again, we submit, it's

7    important that there be a punishment that's commensurate with

8    the crime.

9         The last point that I'll make is I know that the

10   defendant, in his submission, points to other sentences in the

11   broader investigation, where individuals received sentences,

12   either time served in the case of Mr. Cohen, or a year and a

13   day in the case of Mr. Lavidas.  And I just want to point out

14   for the Court's consideration, those sentences were given --

15   government counsel on this call having been involved in both of

16   those sentencings -- they were very heavily driven by the time

17   period in which they were given.  It was the summer of 2020.

18   And while I am mindful that the COVID pandemic is not over at

19   this point, that we are still operating under certain

20   restrictions due to COVID, times have changed substantially

21   since that time period.

22        At that point, there were no vaccines available.

23   There was a great deal of uncertainty.  We were only a few

24   months into the pandemic and nobody had a really good

25   understanding of what would happen.  And frankly, almost

LBJGmalS

1    everything that was happening was remote at that time.

2              At this point, we do have vaccinations.  The Bureau of

3    Prisons has the situation under far more control than they did

4    perhaps at an earlier point.  And in fact, both government

5    counsel and defense counsel on this call, I understand, have

6    been involved in numerous in-person jury trials over the last

7    few months and a little more than that time.  So while we are

8    still sort of not at the complete other end of the tunnel,

9    conditions have changed substantially such that it is no longer

10   appropriate for COVID-19 to account for the type of drastic

11   departures we may have seen a number of months ago.

12             I'll note that the defendant also points out that he

13   spent a substantial amount of time in Swiss prison, which as we

14   note in our submission, we don't object to that time being

15   included within a sentence, although we would point out that

16   the length of that prison term was driven most predominantly by

17   the fact that the defendant fought extradition and litigated it

18   on various levels of appeal in Switzerland, which of course was

19   his right to do and he should not be punished for that.  But

20   that was the reason for the sort of multi-month delay in terms

21   of Swiss imprisonment.

22             So having made those points, the government other than

23   that would rest on its submission, unless the Court has any

24   additional questions for us at this time.

25             THE COURT:  No questions at this point.

LBJGmalS

1        Mr. Schachter, is there anything else you would wish

2    to say to the Court with respect to sentencing before we

3    proceed?

4        MR. SCHACHTER:  Yes.  Thank you, your Honor, for the

5    opportunity to speak on behalf of Dov.

6        Your Honor, I want to impart something that

7    Mr. Jackson and I experienced from our very first meeting with

8    him that I think we both found to be something that was a bit

9    unusual.  At even our very first conversation, as we spoke to

10   him about the events and also to get to know him, the one thing

11   that we found striking was that any mention that even

12   approached a discussion of his children, it would result in him

13   actually needing to pause the discussion.  He couldn't go on.

14   He would stop, he would well up, he would start to cry at their

15   mere mention.  And I think we came to see that that was as a

16   result of two things.

17       The first was, what we learned was the very unique

18   bond that Dov has in particular with his son Natan, who we came

19   to learn of after he was born prematurely.  He suffered from

20   some developmental and emotional issues.  And Dov, being the

21   kind of person -- as we hope your Honor has seen in the letters

22   that were submitted -- who rushes to help, he did that with his

23   son, and he rushed to his side and he stayed at his side from

24   his birth on.  And as I think the letters make clear, he

25   developed a very close attachment, an unusually close

LBJGmalS

attachment.  I mean, every parent obviously loves their

children, but the attachment that I think comes through in the

letters that were submitted to your Honor, I think, show a

relationship that is unique, and I think driven from the

difficulties that Natan has faced.

And we also saw, of course, the relationship that Dov

has with his really then brand new daughter Noah.  And I said I

think we're seeing two things.  Because it wasn't just the

relationship that was causing him to become emotional in such a

way that we had to pause our discussion, but I think we were

also seeing in those very early discussions, Dov recognized the

harm that he had caused -- potential harm at that point -- to

these things that he loved more than anything the world.  That

potential became, of course, a reality, when Dov was arrested

and then incarcerated in Champ-Dollan prison.

And to be clear, Mr. Malnik -- and of course we agree

with Mr. Tracer that this is a serious crime, and nobody would

suggest otherwise, least of all Mr. Malnik -- I don't know that

we agree that in an insider trading fact pattern that someone

who was in Mr. Malnik's role is more culpable than someone like

Mr. Cohen who is the insider.  Of course, legally, the

liability of any person who trades on information is only

derivative of that of the insider who steals the information.

And in the circumstance, Mr. Cohen, did not serve any

term of imprisonment.  We say this, again, not to suggest in

LBJGmalS

1    any way, shape or form that this is not a very serious crime

2    that causes harm to the system at large.  And we in no way

3    disagree with what Mr. Tracer has to say, and nor does

4    Mr. Malnik.

5        We note, rather, that the punishment that Mr. Malnik

6    has suffered for his actions has been very severe.  The papers

7    laid out the conditions that Mr. Malnik found himself in at

8    Champ-Dollan, being incarcerated for eight months during the

9    heart of the pandemic, being confined to a cell for 23 hours a

10   day with an accused murderer, the weeks of quarantine that he

11   faced upon his arrival, the seven weeks that he was of course

12   confined without notice.  And so his children had him taken

13   from them and then separated without any contact whatsoever,

14   not a single call for seven weeks.  He went four months without

15   seeing his four-year-old son.  And then when he was able to, it

16   was through a Plexiglas screen.  He had to miss Noah's first

17   steps, her first words, and saw her only once during the eight

18   months that he was confined there.

19       And I think what is probably hardest is he's had to

20   live with the fact, with the knowledge that he is the one that

21   caused this harm to them, that there's nobody else to blame.

22   And he has never blamed anyone else, never sought to shift

23   blame to anyone else.  He has lived with the knowledge living

24   under those conditions for eight months, he had to live with

25   the knowledge that he is the sole cause of the harm that his

LBJGmalS

children have had to suffer having their father taken from them
with no notice and no explanation that they can understand.  He
certainly believes that, while he will try to remedy that, try
to address that, at age four, this is a trauma that Natan will
carry with him perhaps his entire life.  And Dov has to live
with the fact that he caused that pain, and that is a
punishment that is severe beyond the period of his
incarceration, that he has caused harm to those he loves most.

         And your Honor, I should note that there were many,
many beeps on the phone.  And that is by the people that love
Dov.  His wife is on, his parents, his brothers, friends.  And
he thinks of them not only as being grateful for their love and
the support through this, but also as the people that he has
harmed through his actions.  And that is a very severe
punishment indeed.

         It is also worth noting that this punishment has
continued beyond just the eight months that he was incarcerated
at Champ-Dollan.  But he has also been under home confinement
here, separated from his family for the past five months in a
foreign land, which of course is different than being confined
to one's home where they have their loved ones near them, able
to visit.  And so that is a separation beyond the eight months
that continues to be a severe punishment.  A warranted one --
and Dov would not quarrel with that -- but a punishment that is
lengthy, harsh and that he has already served.

LBJGmalS

1          And of course, Mr. Tracer is right about the effects

2     of the pandemic easing, but I think what Judge Cote considered

3     when she was providing sentence to Mr. Lavidas and what Judge

4     Pauley recognized was that the issue with respect to the

5     pandemic has been the very, very difficult conditions that one

6     faces when they're incarcerated under the conditions that

7     prisons had to impose by virtue of the pandemic.  And so it is

8     that period of time, it is because of that condition that Dov's

9     incarceration was -- Champ-Dollan has terrible conditions, it

10    would have been terrible under any circumstances -- but it was

11    that much worse because he was serving this time during the

12    pandemic.  It's for that reason that Judge Oetken in addressing

13    it thinks about the time served during the course of the

14    pandemic as being one and a half or two times the length of

15    time that was actually served because the conditions are so

16    harsh.

17          We should also note, in terms of punishment or really

18    a signal, not just of punishment, but also of his desire to

19    accept responsibility beyond his guilty plea, but Mr. Malnik

20    has also reached an agreement to pay a financial penalty, the

21    financial penalty that was demanded by the Securities and

22    Exchange Commission.  Those papers were submitted to Judge

23    Preska yesterday.  And so he's paying a penalty of $2.8 million

24    in addition to that, which bears noting.

25          So your Honor, it's for those reasons that we pray

LBJGmalS

1    that the Court agrees with probation that the punishment that

2    Mr. Malnik has already suffered is sufficient to meet the

3    requirements of 3553(a), particularly in light not just of the

4    punishment he has sustained already, but in light of the

5    sentences that were meted out to the other participants in the

6    scheme.

7          And also, we pray that your Honor reaches that

8    conclusion because of the harm that will be caused by further

9    separation to Dov's children in particular.  They had to live

10   with having their father separated from them for that period,

11   and now they are back in touch.  They are able to have regular

12   FaceTime communications.  And to be placed in a circumstance

13   where he is to be separated again from his children, it is

14   obviously a significant worry about the additional harm that

15   his children will suffer as a result of that.  And to be clear,

16   your Honor, Mr. Malnik knows that if that happens, that is his

17   fault.  But we hope that the Court will conclude that further

18   incarceration is not necessary to meet the purposes of

19   sentencing.

20         And we also note, your Honor, that any sentence, any

21   additional sentence to be imposed here creates a level of

22   uncertainty and difficulty beyond those that other similarly

23   situated people before the Court would suffer.  And that is

24   because he is not a citizen, he is not eligible for the

25   conditions of confinement at a minimum security facility that

LBJGmalS

anybody else standing before the Court for this offense would

face.  He's not eligible for that.  The Bureau of Prisons will

not allow a noncitizen to be placed in a minimum security

prison.  That was a significant factor that Judge Pauley

considered in choosing not to impose any period of confinement

for Mr. Cohen.  And also, he would be placed in a private

prison.  And as we outlined in our papers, the conditions at

the private prisons is just significantly worse than those that

are under the auspices of the Bureau of Prisons.

        And lastly, whatever sentence, whatever incremental

sentence would be imposed is indeterminate because it is

outside of anybody's control -- including even the Court's --

to know how long he ultimately will be incarcerated because

when Mr. Malnik completes whatever term of imprisonment would

be imposed, he is then turned over to the Immigration and

Customs Enforcement folks.  And those conditions are famously

terrible.  And while there are steps that can be taken to try

to ease their process prior to deportation, it is impossible to

know with any degree of certainty how long he will be

incarcerated beyond whatever term the Court would impose.

        And so, your Honor, it is for all of these reasons

that it is our hope and our prayer that the Court feels that

the punishment that Mr. Malnik has already sustained is

sufficient.  Thank you, your Honor.

        THE COURT:  Thank you.

LBJGmalS

1          Mr. Malnik, is there anything you would like to say on

2     your own behalf before the Court imposes sentence?

3          THE DEFENDANT:  Yes, your Honor.  And thank you, your

4     Honor, for giving me the opportunity to say a few words.

5          I'm terribly sorry and ashamed to be here before you

6     today.  It has been a very difficult moment for me, it is now

7     and has been for a long time now.  Your Honor, I broke the law,

8     and I regret it deeply.  My conduct was in stark contrast to

9     everything I previously achieved in my life; the hard work I've

10    always put into everything.  It goes against how I was raised

11    and most importantly for how I wish to raise my children.  I'm

12    so sorry for my conduct.  It was wrong.

13         This past year and a half has been hard, the worst and

14    most devastating -- especially for my family, my wife and my

15    young children -- but I have only myself to blame, which I do.

16    I will forever carry with me the burden of knowing that they

17    have been so affected by my own doing.

18         A year ago, last December, I was in prison, while my

19    son, Natan, celebrated his fourth birthday.  Back then, it's

20    been three months that I practically had no conduct with him.

21    My wife sent me a photo standing in front of his birthday cake.

22    She was standing next to him, holding my baby daughter.  And it

23    was difficult to see the empty space on Natan's other side,

24    where I should be.  I've always been inseparable from him.  And

25    I helped him in his challenging condition throughout his life.

LBJGma1S

Not being there to help him was so painful.  And hearing now
today from his schoolteachers the effect that my absence has
had on him, on Natan, and knowing that my actions have
ultimately caused this is devastating.

Your Honor, the many months alone in my prison cell
gave me a lot of time to reflect about my life, about my role
in the lives of people around me and to think again and again
about my actions.  I know that my conduct was wrong.  And I've
learned the meaning of consequences and accountability.  I will
never do anything to jeopardize my integrity or do anything
that goes against my values and the law.

I would like to apologize to my family for the
hardship they had to endure, to my friends -- some of whom are
on this call today -- and thank them all for their support.
One day, I will have to apologize to my kids, and I will
explain them what I did and how it was wrong.  I will need to
answer the many questions that I'm sure my son and daughter
will have about this difficult period in our family's past.  I
will do it, and I will work to be the best father, husband and
community member that I can.  I will help people around me in
any way I can.  And I will try to regain my place in the
community.

I want to finish by apologizing to your Honor, to the
communities that my actions have impacted and anyone affected
by this case.  I humbly and respectfully ask for your leniency.

LBJGmalS

1    Thank you, your Honor.

2              THE COURT:   Thank you.

3              In accordance with the decision by the United States

4    Supreme Court in *United States v. Booker*, the United States

5    sentencing guidelines are not mandatory.   This court

6    nonetheless must consult those guidelines and take them into

7    account at sentencing.   Therefore, the Court has considered the

8    findings of fact cited in the presentence investigation report,

9    as well as the guidelines analysis and the recommendations

10   contained therein.   The Court has weighed this information

11   along with the factors listed in 18 U.S.C. §3553(a) in coming

12   to its final sentencing decision in this case.   The Court

13   adopts the factual recitation in the revised presentence

14   investigation report regarding the criminal history, offense

15   level and sentencing range.   Therefore, the Court finds that,

16   under the guidelines, Mr. Malnik's offense level amounts to 21

17   and his criminal history category falls into category I.   The

18   statutory maximum sentence of imprisonment is 20 years.   The

19   guidelines range of imprisonment for the offense level and

20   criminal history category is 37 to 46 months' imprisonment.

21             Mr. Malnik pled guilty to Count Nine of the

22   indictment, which charged him with making timely and profitable

23   securities trades based on material nonpublic information in

24   violation of 15 U.S.C. Sections 78J.B and 78F.F and also 17 CFR

25   section 240.1B-5 and 18 U.S.C. Section 2.   The probation office

LBJGmalS

1    has recommended that the Court impose a sentence of time

2    served.

3            Subsection (a)(1) of 18 U.S.C. §3553 requires that

4    courts take into consideration the nature and circumstances of

5    the offense and the history and characteristics of the

6    defendant.  Subsection (a)(2) of 18 U.S.C. §3553 requires that

7    the court consider the need for the sentence to promote certain

8    objectives of the criminal justice system, namely, punishments,

9    specific and general deterrence and rehabilitation.  Pursuant

10   to §3553(a)(6), the Court is also directed to consider the need

11   to avoid unwarranted sentencing disparities among defendants

12   with similar records and similar offenses in other cases as

13   well as in connection with the case at hand.

14           Mr. Malnik, I've taken into account the nature and

15   circumstances of the offense and the history and

16   characteristics of the defendant.  In considering all of the

17   factors listed in 18 U.S.C. §3553(a), the Court finds that a

18   sentence of 30 months' imprisonment is reasonable and

19   appropriate and that such a term is sufficient, but not greater

20   than necessary, to promote the proper objectives of sentencing.

21   The Court intends and understands that the 30-month sentence

22   that I have imposed will not or does not include the eight

23   months imprisonment that Mr. Malnik experienced while awaiting

24   extradition.  Therefore, the Court will credit those eight

25   months to the 30-month sentence, meaning that Mr. Malnik's

LBJGmalS

1    total custody in the Bureau of Prisons will not exceed 22

2    months.

3           I will not impose a sentence of supervised release in

4    light of the Court's understanding that Mr. Malnik, not being a

5    citizen, will be subject to immigration custody after

6    completing his sentence for the purposes of deportation.

7           I will also impose a fine in the amount of $50,000, as

8    well as a mandatory special assessment of $100, which shall be

9    due immediately.

10          The Court has received and has so ordered a consent of

11   preliminary order of forfeiture and money judgment that has

12   been signed by both parties.  The amount of the judgment of

13   forfeiture is $1,594,779, which represents the amount of

14   proceeds traceable to the defendant's commission of insider

15   trading in Count Nine as he has admitted.

16          In imposing this sentence, I have taken into account a

17   number of considerations.  The defendant has asked for a

18   sentence of time served, which essentially represents the eight

19   months that he has already served in this proceeding by virtue

20   of his custody in Switzerland.  I am not persuaded that time

21   served, as recommended by the probation department, is

22   appropriate here or warranted.  I believe that time served

23   under the circumstances of this case effectively minimizes the

24   seriousness of the offense and would create, in my view, an

25   unwarranted sentencing disparity with other defendants who have

LBJGmalS

1    committed comparable insider trading conduct.

2            Mr. Malnik was a manager of -- effectively a manager

3    of a criminal enterprise that he originated, that he

4    maintained.  It has international dimension.  It used

5    sophisticated means of various institutions around the world.

6    It went on for a long period of time; several years.  It was

7    very sophisticated.  Mr. Malnik is not an amateur in this

8    business.  He orchestrated the entire scheme.  Again, this is

9    not just occasional insider trading for small profits, in

10   particular, stock.  This went on with multiple securities over

11   the course of many years.  Accordingly, the scope of the breach

12   of trust and confidence that was involved in Mr. Malnik's

13   conduct is much, much greater than it is in the cases of

14   smaller players that -- I consider the circumstances of

15   Mr. Lavidas and Mr. Cohen as falling into the category of being

16   smaller players in a much more modest criminal conduct.

17   Mr. Malnik, in effect, was guilty of cheating and stealing

18   confidential information, dealing in stolen goods to the tune

19   of millions of dollars.  And that is the context in which a

20   determination of what is an appropriate sentence should be

21   regarded.

22           I have taken into account the fact that Mr. Malnik is

23   subject to deportation after he finishes his sentence and that

24   that deportation could conceivably entail another substantial

25   period of time in the custody of the immigration authorities.

LBJGmalS

And in comparable circumstances, this Court has recognized that
as a factor that could be considered in determining appropriate
sentencing that's outside of the guidelines.

I've taken into account Mr. Malnik's expression of
remorse and his family support and the impacts of the sentence
and his incarceration further on his family.  That, of course,
is a circumstance that is not necessarily unique to Mr. Malnik.
Every defendant who is convicted of a crime, if asked about the
impact of the conviction and separation from family and friends
would give you many, many details that would parallel the kind
of difficulties that Mr. Schachter described that Mr. Malnik
will suffer.  So while that is a situation the Court can
consider, it is not the reason for a sentence of time served
that would be unwarranted.

And in that regard, finally, I have taken into account
the potential disparities that would be caused by a sentence of
time served here.  When Mr. Lavidas was sentenced to a year and
a day by Judge Cote -- who indicated that she was not convinced
that that sentence was the appropriate length under the unique
circumstances that appeared before her regarding the impact of
the pandemic.  Similarly, Mr. Cohen's sentence of time served
should not be a measure that Mr. Malnik should also be
sentenced to time served in light of the Court's finding that,
overall, the scope of Mr. Malnik's role in the underlying
conspiracy -- violation, I should say, not conspiracy -- the

LBJGmalS

1    violation of insider trading was multiple degrees much more

2    serious than the role of Mr. Cohen.

3              The sentence as stated is imposed.

4              Mr. Malnik, to the extent you have a right to appeal

5    your sentence and you are unable to pay the costs of an appeal,

6    you have the right to appeal *in forma pauperis*, meaning as a

7    poor person.  If you make such a request, the clerk of court

8    must immediately prepare and file an order for appeal on your

9    behalf.

10             Do you understand your right to appeal to the extent

11   that it may exist?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Mr. Tracer, are there any remaining counts

14   or underlying dockets that need to be dismissed at this time?

15             MR. TRACER:  Yes, there are both, your Honor.  And the

16   government moves to dismiss any remaining open counts against

17   the defendant.

18             THE COURT:  It will be so ordered.

19             Anything else from the government, Mr. Tracer?

20             MR. TRACER:  No, your Honor.

21             THE COURT:  Mr. Schachter, anything else on behalf of

22   Mr. Malnik?

23             MR. SCHACHTER:  Yes, your Honor.

24             I am very concerned that we did not do a good enough

25   job in our sentencing submission of addressing Mr. Malnik's

LBJGmalS

1    role in the offense, your Honor.  We are very concerned that

2    the sentence that the Court has imposed is based on a very

3    significant mistaken fact that is not reflected in the

4    presentence report.  The facts -- and I believe that Mr. Tracer

5    will agree with me -- the facts do not support a conclusion

6    that Mr. Malnik originated or led this scheme.  His role,

7    while -- and we do not dispute in any way its seriousness.  He

8    is a downstream tippee.  He did not originate, lead.  It was

9    not his idea.  And he did not drive the process by which

10   information was misappropriated.  He was someone who -- he had

11   no part in that process.  And he received the information that

12   was handed from person to person.  And that is serious, your

13   Honor, but the facts do not support the idea that he originated

14   or led.  And I am terrified and sick to my stomach that we may

15   have allowed the Court to misapprehend what the nature of his

16   conduct were, your Honor.

17          And while I understand that it is unusual, it is our

18   request, your Honor, to allow us to make a supplemental

19   submission.  Because I know that Mr. Tracer will agree, the

20   government has characterized Mr. Demane, from whom -- who

21   passed this information on to Mr. Malnik -- themselves, they

22   refer to him as a tertiary player in this offense.  And that

23   means that the government, I believe, would view Mr. Malnik as

24   a similar -- actually, as a lesser figure in the offense than

25   Mr. Demane.  And that is not to suggest that his role was not

LBJGmalS

1    serious.

2           But we are very concerned, your Honor, that -- and we

3    beg the Court for the opportunity to delay imposition to give

4    us the opportunity to put in a submission which addresses how

5    the information was misappropriated, how it was passed along,

6    and that addresses Mr. Malnik's role so that the Court can see

7    it.  And it may be that the Court will reach the same decision,

8    we understand that.  But we beg the Court for the opportunity

9    to delay imposition of sentence so that we have the opportunity

10   to make one last submission for the Court and then reconvene

11   this hearing after hearing from both us and from the government

12   as to Mr. Malnik's role.  That is what we are begging the Court

13   for.

14           THE COURT:  I thank you, Mr. Schachter.

15   Mr. Schachter, what you are in a sense saying to the Court at

16   this time is what you would say to the Court of Appeals.  So I

17   think that it would be more appropriate for you to save those

18   arguments for any appeal.  I have examined this record very,

19   very closely.

20           Just one observation that I think is sufficient to

21   indicate why the Court is not persuaded that anything further,

22   any further briefing here is warranted or that the Court should

23   somehow re-examine its sentencing.  Mr. Malnik was not involved

24   in an insider trade transaction involving one stock one time.

25   I indicated -- and I will repeat -- his involvement in this

LBJGmalS

crime occurred over an extensive period of time.  It was a very

sophisticated scheme involving many, many players.  Mr. Malnik

was a key player to the extent that he was the one at the end

of the chain receiving the information and trading upon it.

Again, this is not a one-off, one-time situation.  He, in

effect, was part of an enterprise in which he played a very

significant role that netted him millions of dollars.  That is

not something -- what you have indicated is not something that

I have omitted to consider, and it is part and parcel of my

characterizing the offense here as one that Mr. Malnik managed.

To the extent he received information and he was part of a

chain over many years of receiving stolen, confidential

information and trading upon it, he was the one who originated

that particular transaction based on the information that he

knew was confidential information and not to be used for

insider trading.

So the sentence as stated is imposed.  I don't see

that there is anything further that the Court needs to sustain

its sentence.

Is there anything else, Mr. Schachter?

MR. SCHACHTER:  We understand the Court's decision, of

course.

Your Honor, we would ask that in addition to credit

for the time that Mr. Malnik served at Champ-Dollan that the

Court also provide him credit for the five months that he has

LBJGmalS

served here in home confinement separated from his family.  We
would ask that the Court please consider crediting him for that
time as well.

THE COURT:  Mr. Schachter, I'm not aware of any
precedent where courts have credited home confinement as a part
of reducing the sentence or going beyond a below the guidelines
range on that score.  I have taken -- I have indicated that I
have taken into account all of the circumstances relating to
the difficulties that Mr. Malnik has encountered concerning his
family, separation from them.  That's all part of what I
indicated were the Court's considerations.

Is there anything else?

MR. SCHACHTER:  Yes, your Honor.  Two things.

First, with respect to forfeiture, as the Court is
undoubtedly aware, the plea agreement provides that Mr. Malnik
should be credited for the amounts that he has paid the SEC,
which will exceed the amount of forfeiture.  We have discussed
with the government and we understand that the government will
seek dismissal of the forfeiture order or satisfaction of the
forfeiture order upon payment of the amounts which have now
agreed to be paid to the Securities and Exchange Commission.
So we want to address that.

THE COURT:  When that happens, the government will
submit a revised forfeiture order, and the Court will consider
it at that point.

LBJGmalS

1          MR. SCHACHTER:  And then, your Honor, with respect to

2     designation, we ask that the Court -- we do not believe that

3     the Bureau of Prisons will place Mr. Malnik in a minimum

4     security facility -- we would ask nonetheless that the Court

5     recommend that the Bureau of Prisons place him in a minimum

6     security facility.  Or if they cannot do that, that they

7     designate Mr. Malnik to Allenwood low security, which we

8     understand to be the lowest security designation that they are

9     able to place him in.  But we would ask the Court for the

10     recommendation for either a minimum security facility or to

11     Allenwood in their low security facility.

12          THE COURT:  Thank you.

13          The Court will recommend to the Bureau of Prisons that

14     Mr. Malnik be held in custody at the Allenwood facility.  The

15     Court does not have any authority to, in my view, go beyond and

16     express an opinion about whether Mr. Malnik deserves to be in

17     minimum or maximum security.  That really is a matter within

18     the prerogative of the Bureau of Prisons, but the Court will

19     recommend Allenwood.

20          MR. SCHACHTER:  Your Honor, I understand.  We

21     understand the Court's view on that.  Would the Court be able

22     to recommend Otisville if minimum and Allenwood if low, if that

23     would be possible for the Court to word its recommendation in

24     that fashion.

25          THE COURT:  We are getting, again, into details that

LBJGmalS

1    the Court does not view as appropriate here.  The Court will

2    recommend Allenwood and/or Otisville, but I'm not going to go

3    beyond that and try to spell out for the Bureau of Prisons

4    which inmate deserves to be in one grade rather than another.

5    That really, in my view, would be intruding upon the

6    jurisdiction and the prerogative of the Bureau of Prisons.

7              MR. SCHACHTER:  We understand, your Honor.  Thank you.

8              THE COURT:  If there's nothing else, I thank you.

9    Have a good day and a good weekend.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25